No. 3487

Second Circuit

———

SATTERTHWAIT v. DUNCAN BROS. & HERNDON

———

(July 1, 1929. Opinion and Decree.)

———

L. P. Whittington, Jr., and K. Hundley, of Alexandria, attorneys for plaintiff, appellee.

Thornton, Gist and Richey, of Alexandria, attorneys for defendant, appellant.

REYNOLDS, J. By this action, plaintiff, Willet Satterthwait, sought judgment against defendants, Duncan Brothers & Herndon, a commercial partnership composed of J. W. Duncan, Dock Duncan and A. H. Herndon, and the partners individually, for $582.80 with legal interest thereon from January 1, 1928, for this, to-wit: He alleges that he entered into an agreement with the defendants to sell them—

"a certain Huber traction engine, which, at the time of entering into said agreement, was situated near Bunkie, in Avoyelles parish, Louisiana."

and that the agreement was that—

"he would make the necessary repairs to the engine and have the same loaded and shipped to Lewiston, at which place

said partnership was to try out said engine, and if the same was satisfactory for the work for which said partnership desired to use it, then it would pay to your petitioner $500.00 and the loading and unloading charges."

and that—

"If the same was not satisfactory, after trial, the said partnership was to pay the loading expenses at Bunkie, the freight to Lewiston, unloading expenses at Lewiston, and, in addition thereto, would deliver said engine to petitioner, free of charge, at Alexandria, Louisiana."

and he further alleges—

"That, notwithstanding said engine was unloaded at Lewiston on the date above set forth, and was turned over to said partnership, they have never used the same, and have never tried it, to determine its usefulness for the work for which they desired it."

And he further alleges that the cost of loading the machine at Bunkie and unloading it at Lewiston was $82.80.

And he also asked for judgment recognizing his vendor's privilege on the machine for the amount sued for.

Defendants answered that they had never inspected the machine prior to its arrival at Lewiston and knew nothing about its condition before then, and that on its arrival there they inspected it and—

"found it to be absolutely worn out, and in such dilapidated condition that it was not at all satisfactory to the defendant and it refuses to accept same and offered to deliver it back to the plaintiff at Alexandria, Louisiana, but he refused to accept the return thereof, and demanded the purchase price * * * that the machine was not in first class condition and good running order, as represented by the plaintiff, and was not fit for the uses for which the defendant wanted said machine."

They further allege that defendant advanced plaintiff $57.60 to pay the freight on the machine from Bunkie to Lewiston, and it reconvened against plaintiff for that amount.

On these issues the case was tried and there was judgment in favor of the plaintiff and against the defendants in solido for the amount sued for with recognition of a vendor's privilege on the machine, and the defendants appealed.

## OPINION

The only question presented by the record for our decision is whether defendant purchased the machine from plaintiff. The petition and answer allege and the parties testified that plaintiff was to have the machine transported to Lewiston and defendant was to there inspect and test it and that "if the same was satisfactory for the work for which said partnership desired to use it, then it would pay to your petitioner $500 and the loading and unloading charges, and that notwithstanding said engine was unloaded at Lewiston, defendant has never used the same and has never tried it to determine its usefulness for the work for which defendant desired it."

The plaintiff himself testified:

"Q. So, at the time you entered into this agreement, were they to inspect the tractor, operate it, and try it out, after it was delivered at Lewiston, before the deal was finally consummated?

"A. Yes, sir; it was to be shipped over there, and they were to try it out on the gravel pump, and if it proved satisfactory they were to pay me for it.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Mr. Satterthwait, has the machine been moved from where you unloaded it?

"A. No, sir; sitting right on the planks we put it on when unloaded.

"Q. Has the partnership ever fired up this engine or tried to use it?

"A. Not to my knowing.

"Q. Well, Mr. Whitman testified the governors were off of it.

"A. Yes, sir.

"Q. Why were they removed?

"A. I took the governors off to keep somebody from stealing them.

"Q. When did you take them off?

"A. I think the same day, or the next day, we unloaded.

"Q. Did any member of the partnership know you had taken the governors off and had them?

"A. I don't know whether they did or not.

"Q. Well, after you unloaded it there, did any member of the partnership ever tell you anything at all about the engine, whether serviceable or not serviceable, or that they wanted it or didn't want it?

"A. No, sir; they never said anything about it.

＊　＊　＊　＊　＊　＊

"Q. Now, you allege further, that the agreement was that if this machine was not satisfactory for the purpose for which they wanted it, after they had tried it out, they would pay the freight on it, and deliver it to you in Alexandria?

"A. Yes, sir; to deliver it, free of charge, back to Alexandria.

"Q. Have they ever offered to do that, even?

"A. Well, Mr. Herndon spoke about it, when I went after them once to know what they were going to do about the pay, and he said they would deliver it back to Alexandria; and I told him I could not accept that, on account they had never tried the boiler out.

＊　＊　＊　＊　＊　＊

"Q. And you admit that Mr. Herndon offered to return it, and you refused to accept it?

"A. I did refuse, on the ground that they never tried the engine out at all."

Oreley Satterthwait, plaintiff's son, testified:

"Q. Your father represented to Mr. Herndon that the boiler and engine and everything was in good condition?

"A. Yes, sir.

"Q. And Mr. Herndon agreed to use it, if perfectly satisfactory when shipped up there?

"A. Yes, sir.

"Q. You didn't say anything to Mr. Herndon and Mr. Duncan about taking these governors and things off the boiler?

"A. No, sir.

"Q. Your father is the one that had you take these off?

"A. Had me take them off and bring them in.

"Q. To Alexandria?

"A. Yes, sir.

"Q. How far is it from Alexandria to Lewiston?

"A. I don't know how far—must be about fifteen miles, I reckon—something like that.

"Q. And these governors and other things you took off the engine are still in Alexandria?

"A. Yes, sir; down at my father's."

It is quite clear from what has gone before that there never was a completed sale of the machine, for the reason that defendant never accepted it.

Three things are essential to constitute a sale, namely: the thing, the price and consent of the purchaser. Civil Code, art. 2439.

Here the defendant never gave its consent to the sale. The agreement between plaintiff and it was that if after inspecting and testing the machine defendant was of the opinion it would answer the purpose for which it wanted the machine it would pay for it $500 and the cost of the loading at Bunkie and unloading at Lewiston; but the defendant never inspected or tested the machine, and neither expressly nor by implication signified to plaintiff that it would do the work for which it was wanted or that it accepted the machine, and therefore the sale was never completed and defendant never became bound to pay plaintiff the $500 or the cost of loading or unloading.

"Things of which the buyer reserves to himself the view and trial, although the price be agreed on, are not sold, until the buyer be satisfied with the trial,

which is a kind of suspensive condition of the sale."

It may be that plaintiff has an action against defendant to recover damages for defendant's failure to inspect and test the fitness of the machine for the purposes for which it desired it, but this is not such an action.

Defendant does not press its reconventional demand and we therefore assume it is abandoned. If not, however, we do not think it entitled to recover the transportation charges in view of the fact that the machine was transported to Lewiston for the convenience of defendant in inspecting and testing it and that defendant never did inspect or test it.

The judgment appealed from is therefore annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff's demand be rejected and his suit dismissed at his cost. Reserving to him, however, the right to bring any other action in the premises he may be advised to.